WM. PIERSON *v.* THE CINCINNATI AND WHITEWATER CANAL CO.

(No. 7,879.)

1. The owner of land who allows the construction and use of a public canal through his lands, although claiming damages therefor from the begining, will, after such occupation and use for a period of years, be deemed

Wm. Pierson *v.* The Cincinnati and Whitewater Canal Co.

to have originally consented to the dedication to such use, and be estopped from enforcing his claim to the possession of the land, so used as such public highway.

2. The question as to the period of occupation will not be important, if the owner's intention is otherwise clearly proved. The use of the way for comparatively a few years is sufficient to establish the right of the public.

SPECIAL TERM.—Action to recover possession of certain lands in the city of Cincinnati. Petition was filed December 18, A. D. 1858, and from the agreed statement of facts it appears:

"That the plaintiff was the owner in fee of a six-acre tract of land lying in the western portion of the city; that in the year 1838, the defendant entered upon the tract, surveyed and located the canal on it as now constructed; that the amount of land actually taken and occupied for the canal and towpath was about three-quarters of an acre; that when the work of construction was commenced at plaintiff's tract, he tried to stop the contractor and employees, and said to them that they could not take his land without paying for it; that he then spoke to the canal engineer, on the subject; that the subject was spoken of frequently for several years; that the canal company once offered the plaintiff $500 in settlement, which he refused to accept, and that plaintiff never did consent to their taking his land.

"That the plaintiff sent Mr. Nelson Speer to the company, and he addressed the canal board the following letter:

"'*Gentlemen*—I wish to call your attention to the subject of damages done my property by the Whitewater Canal passing through the same, near Sixth street, next west of H. Hathaway's property. The canal makes a bend on my property, and cuts it up in such a manner that it is very much damaged; when the culvert was building at Millcreek, the engineer ordered his men to haul gravel off another part of my property, to a considerable amount, which I have not yet received pay for.

" ' I, therefore, wish to have the matter amicably settled.
WILLIAM PIERSON,

" CINCINNATI, May 15, 1843.    By Nelson Speer.

" To the President and Directors of the Cincinnati and Whitewater Canal Co.' "

" Upon which there is indorsed by the company ' Referred to the engineer, attorney and president to examine, and report to the board.' "

" That about two years after this (nothing having been done in the meanwhile in relation to the matter) Speer repeated this application; that the president said they were about appointing appraisers on several unsettled cases; that the matter should be attended to, and that nothing more was ever said or done by either party until the commencement of this suit.

" That the plaintiff always claimed to be paid for the land, but thought he would let the matter stand until the canal broke up, and then he would get the land back, or bring a suit, before he was barred by law. That the plaintiff saw the defendant's agents surveying the location, and knew what they were doing it for; that they staked off the land, and took it; that the plaintiff did not pull up the stakes; that he sent Speer, three or four years after the land was taken, to settle, but don't remember what he instructed him to do; that he has made no application to the defendant since, in regard to it.

" That he, in conveying lots on the canal, called for the canal as the boundary in his deeds.

" That the defendant was incorporated under an act of the general assembly of the State of Ohio, passed April 1, A. D. 1837, with the amendments of March 16, A. D. 1839, and March 27, A. D. 1841; that the canal has ever since been kept up and maintained, according to the acts of incorporation, and that the company has had possession of the land in controversy since the day it took the same; that the plaintiff used water from the canal for many years for

the purpose of manufacturing brick. That on the 8th day of April, 1839, the commissioner of Hamilton county appointed three competent men to arbitrate and settle the claims of landholders against the canal company, for land and material taken for the construction of the same, and that the arbitrators accepted said appointment, and entered upon the discharge of their duties. What was ever done by them is not in evidence."

Upon these facts, the case was argued and submitted.

*Stallo, Andrews & McCook*, for plaintiff.

*King & Anderson*, for defendant.

STORER, J. The plaintiff claims to recover the possession of a tract of land now occupied by the Cincinnati and Whitewater Canal, and which has been used for that purpose for nearly twenty years.

It is alleged the property has never been legally appropriated for the purposes of the corporation, as is required by their charter; nor has the plaintiff been paid any sum, whatever, as an equivalent for his estate, or granted it by any mode of conveyance.

The proof is, that the plaintiff permitted the defendants to take possession of the land, and dig their canal; but, as he alleges, on the condition he should be paid its value. After the work was completed, the plaintiff, from time to time, asked remuneration, and, as early as May, 1843, made a written request to be paid his damages. The defendants, at that time, were unable to pay their debts, and no definite action seems to have been afterward taken upon the plaintiff's claim. Since then, and until this suit was brought, the plaintiff admits he has made no effort to recover his right, as he believed the canal would be, ere long, abandoned, when the land would be his. He further admits, his claim for the value of the property taken, when the defendants were required to pay, was $500.

It is admitted that the canal passing through the property has been in daily use, except in case of accident or injury to the general work, from the time of its completion in 1839.

We are asked, upon these facts, to give the plaintiff the immediate possession of a portion of a work authorized by law to be constructed, and which is declared by the statute to be " a public highway," the effect of which will be, greatly to impair the value of the work itself, and break up the connection between its different parts, for about two hundred feet in length,.and sixty in breadth.

We are satisfied, upon the above facts, the plaintiff can not recover—

*First*, Because he has permitted the defendants to take possession of his land, on the faith that they might use it for the purpose of their canal; that he assented to the improvement, as well as the expenditure of money to complete it, and can not, after so public an admission of the defendants' right to enter, coupled with the long subsequent enjoyment, set up, at this day, any claim to its occupation. If we permitted him to do so, we should disregard one of the soundest and best established rules in equity, " that if a man knowingly, though he does it passively, by looking on, suffers another to purchase and spend money on land, under an erroneous opinion of title, without setting up his claim, he shall not afterward be permitted to assert his legal right. It would be an act of fraud and injustice to permit him to do so; his conscience is bound by the equitable estoppel." 1 Johnson Ch'y, 354, *Wendell* v. *Van Rensselaer*; 10 Ohio, 288, *Buckingham et al.* v. *Smith & Dille.*

It is said, however, that the defendants had no power to take lands for their canal, except in the mode prescribed in their charter, and they can not, therefore, defend themselves on the ground that the plaintiff is estopped. As a general principle, the remark is true; but it can not be denied that a parol license to enter, for the necessary purposes of the canal, would have protected the defendants from the action of trespass, and if the possession should continue until the

statutory limit had arrived, the right of the original owner would be gone; and where, as in the present case, not only the possession was taken by the consent and knowledge of the plaintiff, and an important public work erected, by the outlay of a large amount of money, it can not be said that the defendants have not the same right to be protected that pertains to the individual citizen, who may have occupied and improved, by expending his labor and employing his capital.

We can perceive no difference in the cases. The only question can properly be, was the property taken required for the purposes of the canal? When this fact is ascertained, the right thus secured to the defendants, by the conduct of the plaintiff, must depend on, and be controlled by the ordinary rule.

*Secondly,* we think the plaintiff, from the testimony before us, may well be regarded as having dedicated the property for the purposes for which it was used, and thus invested the defendants with the right of user, at least. We have already said the canal, when completed, is declared, by law, to be a public highway, and for all proper purposes, the rule by which the dedication of roads, commons, and other public thoroughfares, is established, must prevail here. Angell on Highways, sec. 49.

We need not refer to the various acts which have been held to estop the original owner, when the public right to use an highway is questioned; it is sufficient to say, that such conduct, either by express permission or passive assent, as clearly indicates the intention to abandon the property for public purposes and when clearly proved, precludes all claim to prevent the unobstructed use; and thus, whenever a road has been laid out and traveled for a number of years, less even than the statutory bar, the presumption will be that it was legally established, though no evidence of the fact appears of record. 12 Ohio, 527, *Ingersoll* v. *Herider.*

And the question as to the time of occupation will not be important, if the owner's intention is otherwise clearly

proved.    In such a case the use of the way for comparatively a few years, is sufficient to establish the right of the public; 11 Metcalf, 421, *Larned* v. *Larned;* 19 Pickering, 405; *Hobbs* v. *The Town of Lowell;* and the late case of the *Queen* v. *Petrie,* 30 E. L. and E. 207.

We may hold, then, that the evidence in the cause establishes, very clearly, a dedication, by the plaintiff, of the property he now seeks to recover; not only by prior assent, but subsequent permission, and we ought not to allow him to resume a right that we are satisfied he was always willing to surrender, if he had been paid the value of his land.    He made no claim until the canal was completed, and he must now stand on the same footing with the ordinary creditors of the corporation.    He can not now destroy the public highway, by taking possession of the land over which it passes, and thus severing it into parts.    The whole work, from its commencement in Cincinnati, to its terminus in Indiana, is a unit; not even a judgment creditor can sell a part of it on execution, and no former owner of the fee, who has acquiesced in its appropriation, can change his relation of creditor into that of proprietor.    He has voluntarily taken his position, and must occupy that, and no other.

Judgment for defendant.